1

2

3          *E-FILED - 6/29/11*

4

5

6

7

8                IN THE UNITED STATES DISTRICT COURT

9

10             FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

DONALD R. DEBOSE, JR.,              )        No. C 09-5998 RMW (PR)
12                                  )
           Plaintiff,               )        ORDER GRANTING MOTION
13                                  )        FOR SUMMARY JUDGMENT
      v.                            )
14                                  )
FORMER WARDEN ROBERT AYERS, et )
15 al.,                             )        (Docket Nos. 33, 48)
                                    )
16         Defendants.              )
   _____)

17

18        Plaintiff, a California prisoner proceeding pro se, filed the instant civil rights action

19 pursuant to 42 U.S.C. § 1983 alleging that defendants were deliberately indifferent to his serious

20 medical needs.  Defendants have moved for summary judgment, arguing that there is no genuine

21 issue of material fact and that they are entitled to the judgment as a matter of law.  Plaintiff has

22 filed an opposition, and defendants have filed a reply.  Plaintiff has also requested leave to file a

23 supplemental opposition, to which the defendants have objected.  The court GRANTS plaintiff's

24 leave to file a supplemental opposition.  Having carefully considered the papers submitted, the

25 court hereby GRANTS defendants' motion for summary judgment as to all the defendants

26 named by plaintiff, for the reasons set out below.

27

28

1

### BACKGROUND[1]

2    Plaintiff is currently a prisoner at San Quentin State Prison ("SQSP"). In his complaint,

3    plaintiff alleges that defendants at SQSP were deliberately indifferent to his medical needs. On

4    May 15, 2008, plaintiff was being transported from Doctor's Medical Center to SQSP. (Pl. Decl.

5    at ¶¶ 5-6.) On his way back to SQSP, defendants placed plaintiff into a steel metal cage in the

6    transport vehicle, but failed to secure plaintiff with a seat belt. (Id. at ¶¶ 6-7.) During the

7    transport, the vehicle was rear-ended. (Id. at ¶¶ 11-15.) Plaintiff did not mention that he was

8    injured or that he was in pain. (Decl. Stocker ("Pl. Depo.") at 38.) Upon their return, defendants

9    did not send any medical staff to tend to plaintiff. (Pl. Decl. at ¶ 20.) Thereafter, plaintiff told a

10   supervisor that he had been in an accident, and the supervisor sent plaintiff to "TTA" two hours

11   later. (Id. at ¶ 21.) Plaintiff claims that he was not seen by anyone for medical treatment for two

12   and a half to three hours, and then, a nurse rather than a doctor tended to him. (Complaint, Ex.

13   A3; Pl. Depo. at 54.) At that time plaintiff was not in pain. (Pl. Depo. at 55.) In fact, plaintiff

14   did not feel any pain until two to four days after the accident. (Id. at 38, 55.)

15   On May 22, 2008, Officers Burris and Duke escorted plaintiff to the "TTA." (Pl. Decl. at

16   ¶ 23.) Nurse Alex took plaintiff's vital signs and told plaintiff that defendant Dr. Grant would

17   see him. (Id. at ¶ 24.) Grant told plaintiff he had to attend a meeting but would return. (Id. at

18   ¶ 25.) Three hours later, Grant returned but informed plaintiff that he was told not to see him,

19   and then left. (Id. at ¶ 26.)

20   The following day, on May 23, 2008, a nurse saw plaintiff and told him to channel his

21   energy. (Id. at ¶ 27 and Ex. C.) On June 6, 2008, Defendant Dr. Leighton examined plaintiff

22   and told him that he had an upper back and neck strain. (Id. at ¶ 28.) She ordered physical

23   therapy for plaintiff and informed him that she would also order an MRI if physical therapy did

24   not help. (Id. at ¶¶ 28-29.) Thereafter, on December 22, 2008, Leighton decided not to order an

25   MRI, stating that it was not medically indicated. (Id. at ¶ 30; Pl. Depo. at 85, 89.)

26

27

28

---

[1] The following facts are taken in the light most favorable to plaintiff.

**ANALYSIS**

A.      Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is not the task of the court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. Id. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp v. Catrett, 477 U.S. at 323.

At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with

1  evidence produced by the nonmoving party, the judge must assume the truth of the evidence set

2  forth by the nonmoving party with respect to that fact.  See Leslie v. Grupo ICA, 198 F.3d 1152,

3  1158 (9th Cir. 1999).

4  B.   Evidence Considered

5       A district court can only consider admissible evidence in ruling on a motion for summary

6  judgment.  See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).

7  A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based

8  on personal knowledge and sets forth specific facts admissible in evidence.  See Schroeder v.

9  McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint

10 as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746,

11 plaintiff stated under penalty of perjury that contents were true and correct, and allegations were

12 not based purely on his belief but on his personal knowledge); see also Keenan v. Hall, 83 F.3d

13 1083, 1090 n.1 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998) (treating allegations in

14 prisoner's verified amended complaint as opposing affidavit).  Like a verified complaint, a

15 verified motion functions as an affidavit.  See Johnson v. Meltzer, 134 F.3d 1393, 1400 (9th Cir.

16 1998).  Plaintiff's declaration (docket no. 46) is also verified.  On the other hand, plaintiff's

17 opposition (docket no. 45) and supplemental opposition/declaration (docket no. 49) were not

18 verified and thus, will not be considered as affidavits.

19 C.   Analysis

20       1.   Supervisory Defendant

21       Here, plaintiff names former warden Robert Ayers in his complaint as having violated his

22 constitutional rights.  Ayers would not have been directly involved in plaintiff's medical care,

23 nor does plaintiff allege that he had any direct involvement.  "In a § 1983 or a Bivens action –

24 where masters do not answer for the torts of their servants – the term 'supervisory liability' is a

25 misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding,

26 is only liable for his or her own misconduct." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)

27 (finding under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Rule 8 of the Federal

28 Rules of Civil Procedure, that complainant-detainee in a Bivens action failed to plead sufficient

1   facts "plausibly showing" that top federal officials "purposely adopted a policy of classifying

2   post-September-11 detainees as 'of high interest' because of their race, religion, or national

3   origin" over more likely and non-discriminatory explanations).

4           A supervisor may be liable under section 1983 upon a showing of "(1) personal

5   involvement in the constitutional deprivation or (2) a sufficient causal connection between the

6   supervisor's wrongful conduct and the constitutional violation." Redman v. County of San

7   Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (internal citations omitted).  A supervisor

8   therefore generally "is only liable for constitutional violations of his subordinates if the

9   supervisor participated in or directed the violations, or knew of the violations and failed to act to

10  prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

11          Although plaintiff has made allegations regarding the medical care he has received in

12  prison, there is no allegation that Ayers was involved in any way in determining plaintiff's

13  medical care, nor did he cause the alleged violations.  Thus, there is no genuine issue of material

14  fact as to plaintiff's claims against Ayers.  As such, the court grants defendants' motion for

15  summary judgment as to defendant former warden Robert Ayers.

16          2.      Defendants Lee and Grannis

17          Plaintiff also named as defendants Sergeant D. Lee and N. Grannis.  It appears that

18  plaintiff named them for failing to properly exercise their "professional judgment" in responding

19  to plaintiff's administrative appeals.  (Pl. Decl. at ¶ 32.)  However, there is no constitutional right

20  to a prison administrative appeal or grievance system.  See Ramirez v. Galaza, 334 F.3d 850, 860

21  (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).

22          Moreover, liability may be imposed on an individual defendant under 42 U.S.C. § 1983

23  only if the plaintiff can show that the defendant proximately caused the deprivation of a federally

24  protected right.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).  "A person deprives

25  another 'of a constitutional right within the meaning of section 1983 if he does an affirmative

26  act, participates in another's affirmative act or omits to perform an act which he is legally

27  required to do, that causes the deprivation of which [] the plaintiff complains []'".  Leer, 844

28  F.2d at 633 (internal citations omitted).  To defeat summary judgment, plaintiff must "set forth

1 specific facts as to each individual defendant's" actions which violated his rights. <u>Id.</u> at 634.

2 Even at the pleading stage, "[a] plaintiff must allege facts, not simply conclusions, that show that

3 an individual was personally involved in the deprivation of his civil rights." <u>Barren v.</u>

4 <u>Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998).  As plaintiff has not alleged any facts, even if

5 true, that indicate that Sergeant D. Lee or N. Grannis affirmatively acted against him or failed to

6 take steps which they were legally required to do, summary judgment is granted as to these

7 defendants.

8      3.   <u>Non-medical defendants</u>

9      Plaintiff also named as defendants P. Crerar, D. Seilhan, Sergeant Chu, Lieutenant E.

10 Evans, and Captain R. Fox.  According to plaintiff, Crerar, Seilhan, and Chu were the officers

11 escorting plaintiff back to SQSP from his outside medical appointment.  (Pl. Decl. at ¶ 5.)  Evans

12 and Fox were awaiting plaintiff when he returned to SQSP.  (<u>Id.</u> at ¶ 19.)  Plaintiff's main

13 complaint against these defendants appears to be that they did not direct him to see any medical

14 professional to receive a full medical examination.

15      Deliberate indifference to serious medical needs violates the Eighth Amendment's

16 proscription against cruel and unusual punishment.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104

17 (1976); <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled on other grounds</u>,

18 <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A

19 determination of "deliberate indifference" involves an examination of two elements: the

20 seriousness of the prisoner's medical need and the nature of the defendant's response to that

21 need.  <u>See</u> <u>McGuckin</u>, 974 F.2d at 1059.[2]

22      A prison official is deliberately indifferent if he knows that a prisoner faces a substantial

23 risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.

24 ──────────

25    [2] In plaintiff's opposition, he argues that defendants were also deliberately indifferent to his safety needs, and attempts to support his argument by intimating that defendants were driving

26 too fast and not paying attention.  However, in plaintiff's complaint, he claimed that defendants disregarded his medical care.  Plaintiff did not present, and the court did not find, a cognizable

27 claim that defendants were deliberately indifferent to his safety needs in transporting him to SQSP.  Accordingly, the court will not address that issue because it was not properly raised in

28 his complaint.

1   Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of

2   facts from which the inference could be drawn that a substantial risk of serious harm exists," but

3   he "must also draw the inference."  Id.  If a prison official should have been aware of the risk,

4   but was not, then the official has not violated the Eighth Amendment, no matter how severe the

5   risk.  Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

6          Here, plaintiff acknowledged that at no time between the time of the accident and his

7   return to SQSP did he inform anyone that he had been injured, or that he was in pain.  (Pl. Depo.

8   at 38.)  After returning to SQSP, plaintiff was sent to the medical clinic and was seen by a nurse.

9   (Id. at 54-55.)  Plaintiff was not in pain then, and in fact, plaintiff stated that he did not begin to

10  feel any pain until two to four days after the accident.  (Id. at 38.)  There is no allegation that

11  these non-medical defendants were aware of any risk of serious harm, much less that they

12  disregarded that risk by failing to take reasonable steps to abate it.  See Farmer, 511 U.S. at 837.

13  That plaintiff believes now that, immediately after his return to SQSP, he should have received a

14  full examination by a doctor rather than receive an appointment with a nurse is of little

15  consequence.  (Pl. Depo. at 59-62.)  This belief is based merely on plaintiff's opinion rather than

16  on personal knowledge, and is insufficient to establish a genuine issue of material fact.  Thus,

17  defendants' motion for summary judgment is granted as to  P. Crerar, D. Seilhan, Sergeant Chu,

18  Lieutenant E. Evans, and Captain R. Fox.

19          4.      Defendant Dr. Grant

20          Plaintiff complains that, on May 22, 2008, he was experiencing pain in his neck, side,

21  and lower back.  (Pl. Decl. at ¶ 22.)  Plaintiff saw a nurse who took his vital signs and called for

22  Dr. Grant.  (Id. at 24.)  Grant came in to see plaintiff and told him that he had to attend a

23  meeting, but would return.  (Id. at ¶ 25.)  Three hours later, Grant returned and informed him that

24  he was told not to see plaintiff, and left for the day.  (Id. at ¶ 26.)

25          Even assuming that on May 22, 2008, plaintiff presented a serious medical need, there is

26  no genuine issue of material fact as to whether Grant was deliberately indifferent.  According to

27  plaintiff's pleadings, these were the only two encounters plaintiff had with Grant.  There is no

28  indication that Grant knew that plaintiff faced a substantial risk of serious harm and disregarded

1   that risk by failing to take reasonable steps to abate it.  See Farmer, 511 U.S. at 837.  Moreover,

2   these incidents were, at most, negligent, and not sufficient to sustain an allegation of deliberate

3   indifference.  See O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990) (repeatedly failing to

4   satisfy requests for aspirins and antacids to alleviate headaches, nausea and pains is not

5   constitutional violation; isolated occurrences of neglect may constitute grounds for medical

6   malpractice but do not rise to level of unnecessary and wanton infliction of pain).  Accordingly,

7   defendants' motion for summary judgment is granted as to defendant Grant.

8          5.    Defendant Dr. Leighton

9          Plaintiff alleges that on June 6, 2008, Dr. Leighton concluded that plaintiff had upper

10  back and neck strain and ordered physical therapy.  (Pl. Decl. at ¶ 28.)  She also indicated that if

11  physical therapy was unhelpful, she would order an MRI.  (Id. at ¶ 29.)  On a follow-up visit in

12  December 2008, Leighton decided not to conduct that MRI, stating that she had read an article

13  that patients who undergo an MRI "begin to feel bad about themselves," and she did not want

14  that.  (Id. at ¶ 30.)  Leighton also indicated that she and plaintiff discussed the lack of benefit

15  from receiving an MRI, and opined that there was no necessity for an MRI or surgery.

16  (Complaint, Ex. H-5, H-6.)  Plaintiff states that he and Leighton got into an argument that day

17  regarding her decision not to give him an MRI.  (Pl. Depo. at 84-85.)  Leighton told plaintiff that

18  she did not believe an MRI was medically indicated.  (Id. at 89.)

19         Again, even assuming that plaintiff's condition presented a serious medical condition,

20  there is no genuine issue of material fact as to whether Leighton was deliberately indifferent.  On

21  June 6, 2008, she examined him and determined that he had upper back and neck strain.  She

22  ordered physical therapy.  She considered ordering an MRI if the initial therapies did not work.

23  In December 2008, she told plaintiff that an MRI was not medically indicated or necessary,

24  although plaintiff wanted to receive an MRI.

25         "A difference of opinion between a prisoner-patient and prison medical authorities

26  regarding treatment does not give rise to a § 1983 claim."  Franklin v. Oregon, 662 F.2d 1337,

27  1344 (9th Cir. 1981).  Similarly, a showing of nothing more than a difference of medical opinion

28  as to the need to pursue one course of treatment over another is insufficient, as a matter of law,

1  to establish deliberate indifference.  See Toguchi v. Chung, 391 F.3d 1051, 1059-60 (9th Cir.

2  2004).  In order to prevail on a claim involving choices between alternative courses of treatment,

3  a plaintiff must show that the course of treatment the doctors chose was medically unacceptable

4  under the circumstances and that he chose this course in conscious disregard of an excessive risk

5  to plaintiff's health.  Toguchi, 391 F.3d at 1058.

6          At most here, plaintiff has a difference of opinion as to whether Leighton should have

7  ordered an MRI.  Further, he has provided nothing to suggest that Leighton's avenue of

8  treatment was medically unacceptable under the circumstances, or that she chose those methods

9  of treatment in conscious disregard to plaintiff's health.  See id.  Accordingly, defendants'

10  motion for summary judgment is granted as to defendant Leighton.

**CONCLUSION**

12          Defendants' motion for summary judgment is GRANTED.

13          IT IS SO ORDERED.

14  DATED:  __6/28/11_____

*Ronald M. Whyte*

15                                          RONALD M. WHYTE
                                           United States District Judge